MOORE, Chief Justice
(dissenting).
Jim Walter Resources, Inc. (“JWR”), owns and operates coal mines in Alabama. In the early 1980s, JWR and El Paso Production (“El Paso”) formed Black Warrior Methane Corp. (“BWM”) to remove methane from JWR’s mines through the construction of methane wells. BWM and JWR operate out of the same building in Brookwood. JWR and El Paso each own 50 percent of the shares of BWM. BWM is responsible for developing plans for the removal of methane from JWR’s mines, for drilling the methane wells, for gathering the methane, and for selling the methane. Neither JWR nor El Paso is involved in controlling BWM’s day-to-day operations and, pursuant to the terms of an operating agreement between JWR and El Paso, are forbidden from trying to control BWM.
When BWM proposes to drill a methane well, its officers submit the plan to its board of directors. One of the members of BWM’s board of directors is George Richmond, who is also a member of the board of directors of JWR. When BWM’s board of directors receives a proposal, the board reviews the plan, expresses any concerns it has, and then either approves or rejects the proposal. If the proposal is approved, BWM then makes a capital request to JWR and El Paso for financing for the proposal. After JWR provides the necessary capital to BWM,[1] BWM contracts with other companies to build the pipelines to transport the methane from JWR’s mines to BWM’s compression sites. When BWM sells methane, 50 percent of the proceeds goes to El Paso and 50 percent goes to JWR. BWM does not make profits from the sale of methane, but it covers all its expenses through financing from JWR and El Paso.
In 2007, BWM began a project to construct a pipeline from one of JWR’s mines in Brookwood to one of BWM’s compression sites. During the course of this project, there was a last-minute reroute of the pipeline. BWM mistakenly believed that the property over which the pipeline would run belonged to U.S. Steel Corporation, but it actually belonged to Johnny Lloyd Burchfield, Pansy Burchfield, Opal Burch-field, and Alice Burchfield McCraw (“the *619 Burchfields”). Because of that mistake, BWM did not obtain permission from the Burchfields to build the pipeline, and the pipeline was constructed on the Burch-fields’ property. The pipeline is owned and operated by BWM. However, the methane that travels through the pipeline is owned by JWR.
The Burchfields sued BWM and JWR on August 3, 2009, in the Jefferson Circuit Court, alleging, among other counts, trespass, nuisance, and unjust enrichment. On December 20, 2009, JWR moved for a summary judgment, alleging that it was not responsible for BWM’s actions in constructing or operating the pipeline. The trial court granted JWR’s motion for a summary judgment on August 3, 2010. The Burchfields appeal.[2]
The Burchfields argue that they presented substantial evidence showing that a genuine issue of material fact exists as to whether JWR is liable for trespass because JWR owns the methane that is being pumped through the pipeline that extends across the Burchfields’ property. “[I]n order for one to be liable to another for trespass, the person must intentionally enter upon land in the possession of another or the person must intentionally cause some ‘substance’ or ‘thing’ to enter upon another’s land.” Bom v. Exxon Corp., 388 So.2d 933, 934 (Ala.1980) (emphasis added).
“ ‘One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
“ ‘... [ejnters land in the possession of another, or causes a thing or a third person to do so....
[[Image here]]
[[Image here]]
“ ‘... It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter.’ ”
Rushing v. Hooper-McDonald, Inc., 293 Ala. 56, 59, 300 So.2d 94, 96-97 (1974) (quoting Restatement (Second) of Torts § 158 & cmt. i) (emphasis omitted; emphasis added).
In this case, JWR owns the methane BWM is pumping across the Burchfields’ property. Thus, a jury could reasonably infer that JWR is continuing to allow BWM to transport its methane “ ‘with knowledge that it will to a substantial certainty result in the entry of the foreign matter’ ” onto the Burchfields’ property. Rushing, 293 Ala. at 59, 300 So.2d at 97 (quoting Restatement § 158 cmt. i).
The Burchfields also argue that they presented substantial evidence showing that a genuine issue of material fact exists as to whether JWR is liable for trespassing because BWM was acting as JWR’s agent. “ ‘Without question one may commit a trespass through another as his active agent or joint participant, although the one may not be present at the time, taking any personal hand in the trespass. He must be directing, aiding, participating in, or must ratify the trespass.’” C.O. Osborn Contracting Co. v. Alabama Gas Corp., 273 Ala. 6, 7, 135 So.2d 166, 168 (1961) (quoting Trognitz v. Fry, 215 Ala. 609, 610, 112 So. 156, 157 (1927)) (emphasis added), superseded by statute on other grounds as recognized in Wint v. Alabama Eye & Tissue Bank, 675 So.2d 383 (Ala.1996). Because Richmond sits on the board of directors for both JWR and *620 BWM, a jury question is presented as to whether JWR knew of BWM’s plan to build on the Burchfields’ land and whether it participated in the trespass by funding the project. Moreover, as stated above, it does not appear that JWR made any efforts to stop BWM from pumping its methane over the Burchfields’ property once it learned of the trespass; consequently, a jury could reasonably infer that JWR ratified the trespass. Therefore, I believe that the summary judgment is due to be reversed as to this issue.
The Burchfields also argue that they presented substantial evidence showing that a genuine issue of material fact exists as to whether JWR is liable for nuisance. “[F]or an action in nuisance under § 6-5-120, Ala.Code, 1975, the plaintiff must show conduct, be it intentional, unintentional, or negligent, on the defendant’s part, which was the breach of a legal duty, and which factually and proximately caused the complained-of hurt, inconvenience, or damage.” Hilliard v. City of Huntsville Elec. Util. Bd., 599 So.2d 1108, 1113 (Ala.1992). As discussed above under the trespass issue,[3] it appears that JWR has continued to allow its methane to be transported across the Burchfields’ property after learning of the trespass. This too presents a question for the jury.
Finally, the Burchfields argue that they presented substantial evidence to show that a genuine issue of material fact exists as to their claim of unjust enrichment. The parties agree that the following standard applies in establishing an unjust-enrichment claim: “ ‘The essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud.’ ” Dickinson v. Cosmos Broad. Co., 782 So.2d 260, 266 (Ala.2000) (quoting Hancock-Hazlett Gen. Constr. Co. v. Trane Co., 499 So.2d 1385, 1387 (Ala.1986)). In this case, the Burchfields have presented enough evidence from which a jury could reasonably infer that JWR received profits from the sale of the methane because of its mistaken belief that the Burchfields’ property was owned by U.S. Steel. Therefore, I believe that this issue should have been submitted to the jury as well.
It appears to me that JWR is using BWM as a shield to escape liability. I believe that the Burchfields presented enough evidence of JWR’s involvement to survive a summary-judgment motion and to allow a jury to decide the issues. Therefore, I respectfully dissent.

. El Paso’s role in providing capital is unclear from the record. However, El Paso is not a party to the appeal.

. The Burchfields and BWM settled after the trial court entered the summary judgment in favor of JWR.

. "Indeed, because of the comprehensive language of our nuisance statute (§ 6-5-120), conduct which rises to the level of trespass to land, generally speaking, would support a nuisance action....” Borland v. Sanders Lead Co., 369 So.2d 523, 529 n. 1 (Ala.1979).